United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANNA C. BACHAND,

Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant.

Case No. 25-cv-02061-MMC

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT; GRANTING DEFENDANT'S MOTION FOR JUDGMENT; FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Before the Court are motions for judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure. Plaintiff Anna Bachand ("Bachand") and defendant Reliance Standard Life Insurance Company ("Reliance") have filed their respective briefs, and the Court heard argument on July 10, 2026. Having read and considered the parties' respective written submissions, the arguments of counsel at the hearing, and the applicable administrative record, the Court rules as follows.[1]

## BACKGROUND

Bachand was employed by Medtronic, Inc. as a Research and Development Engineer (see Administrative Record ("AR") 54),[2] which a vocational specialist determined was a "sedentary" occupation pursuant to Department of Labor classifications (see AR 110). Through her employer, Bachand participated in a "group" disability insurance policy ("the Policy") (see AR 1, 16) that provides for payments to participants who become disabled within the meaning of the Policy (see AR 18).

---

[1] This order constitutes the Court's findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a)(1).

[2] The Administrative Record was lodged on February 11, 2026. (See Doc. No. 33.)

Between February 4, 2022, and February 9, 2022, Bachand, then 27 years old, was hospitalized and diagnosed with acute autoimmune hepatitis, in part based on tests showing significantly elevated liver enzymes (see AR 532-33), for which condition she was prescribed, and began taking, prednisone, a steroid (see AR 512).

Over the course of the following year, Bachand regularly visited Edward Holt, M.D. ("Dr. Holt"), her hepatologist, and Sam Ahn, M.D. ("Dr. Ahn"), her immunologist. Together, Bachand and those two doctors developed a treatment plan, which included inter alia, a prescription for the immunosuppressant Myfortic, seemingly with the goal of tapering Bachand's use of prednisone (see AR 779), given the association of its long-term use with negative health consequences.

On April 18, 2022, Bachand returned to work "with restrictions," but "ceased work again" on May 30, 2022 (see AR 245), and, on or around September 6, 2022, she initiated a claim for LTD benefits under the Policy (see AR 361).

By December 21, 2022, Bachand was no longer taking prednisone (see AR 847), and, on March 29, 2023, she told Dr. Holt "she's felt good - almost the best she's felt since this started," leading Dr. Holt to conclude Bachand's use of Myfortic should be tapered as well, provided that tests of her liver enzymes continued to be "good" (see AR 779-80).

A few days later, on April 6, 2023, Bachand reported "[n]ew onset tinnitus from loud music exposure" (see AR 711), apparently from attending a concert (see AR 713) or "dance party" after which "she start[ed] hearing ringing in her ears" (see AR 636). An audiogram revealed Bachand's hearing was 100% of "anticipated values" in her right ear, but 96% in her left ear, after which she was referred to an ear, nose, and throat specialist ("ENT") "for full medical evaluation due to fluctuating ringing in ears." (See AR 264, 636.)

Unfortunately, on May 19, 2023, Bachand suffered a "major flare," marked by elevated liver enzymes levels, a "rash on both hands," "[e]xcessive fatigue," and "some" abdominal pain (see AR 1181); in response thereto, Dr. Holt re-started Bachand on prednisone and increased her Myfortic dosage (see AR 1225).

United States District Court
Northern District of California

On July 5, 2023, Bachand's claim for LTD benefits was approved by Reliance, (see AR 306), which, in its internal review, noted her recent "acute flare with resumption of high dose medications resulting in 05/23 - 07/23 no work function" (see AR 100). That same date, Reliance started monthly benefit payments, and, in addition, paid Bachand benefits for the intervening period beginning on her first day of eligibility, August 4, 2022. (See AR 306.)

Toward the end of 2023, Bachand was showing signs of improvement. In that regard, Dr. Ahn, on November 2, 2023, noted Bachand's liver enzyme levels were once again "stable," and, in light thereof, her doctors began, again, tapering her use of prednisone. (See AR 1241.) On January 11, 2024, Bachand visited Dr. Ahn, who noted she was "[d]oing well, finally off prednisone," taking Myfortic twice a day, and that her liver enzyme tests were "getting better" (see AR 1235), after which, on January 17, 2024, Bachand had a telehealth visit with Dr. Holt, whose notes as to prednisone confirm she was "off completely," taking Myfortic twice a day "with good response," and that "she report[ed] feeling well - better than last time" (see AR 1253-54).

On April 1, 2024, Reliance informed Bachand that its "medical department concluded" she "would be capable of at least *sedentary* work capacity given [her] complete weaning of [p]rednisone," that she was "stable on Myfortic twice a day, and [her] liver function was stabilizing." (See AR 340 (emphasis in original).)

On May 17, 2024, Bachand visited Stephen Perry, M.D. ("Dr. Perry"), her primary care physician, who noted Bachand "present[ed] with a constellation of symptoms," including "regular ear ringing, often accompanied by headaches," as well as "occasional liver pain" and "[f]atigue…which improves with adequate sleep and self-care," symptoms Dr. Perry attributed to "chronic stress." (See AR 1261-62.)

Two weeks later, on May 31, 2024, Bachand appealed Reliance's denial of further LTD benefits, asserting that, despite "test results fall[ing] within normal ranges, [her] ongoing symptoms…continue[d] to impact [her] ability to work" (see AR 1268), and, that, "[i]n addition to the symptoms themselves, [she was] concerned that the unpredictability

and upkeep required when living with [autoimmune hepatitis] preclude[s] full-time work" (see AR 1269).

Four days after lodging her appeal, Bachand visited Dr. Ahn for the first time since her above-referenced January 11 visit. Dr. Ahn's notes state Bachand "[s]till [had] some fatigue and muscle aches but [was] improved." (See Decl. of Anna Bachand ("Bachand Decl.") Ex. A at 4.)[3] On August 13, 2024, Bachand visited Dr. Ahn again, during which visit Dr. Ahn again noted Bachand "[s]till [had] some fatigue and muscle aches but [was] improved," and, in a separate paragraph, that she had "a lot of fatigue"; he "recommend[ed] part-time [work] for at least [six] months." (See id. at 6.)

Two days after said visit, Christian Jackson, M.D. ("Dr. Jackson"), an independent doctor retained by Reliance to evaluate Bachand's appeal, noted, based on his review of Bachand's medical records, including the above-referenced records from Dr. Holt, Dr. Ahn, and Dr. Perry, there was an absence therein of any "medically necessary restrictions or limitations from her autoimmune hepatitis" (see AR 1323), and, in light thereof, concluded the "medical information does not support impairment" (see AR 1324). Prior to reaching his conclusion, Dr. Jackson attempted to call Dr. Holt and Dr. Ahn, twice each, and left "detailed voicemail[s] regarding [his] review [and] requesting a callback." (See AR 1321.) Neither doctor called back. (See AR 1323.)

In response to Dr. Jackson's report, Bachand, on September 9, 2024, submitted to Reliance, inter alia in support of her appeal, a letter from Dr. Ahn and a personal statement. (See AR 1353.)

In his letter, Dr. Ahn wrote that, "[b]ased on [his] ongoing evaluation and treatment of [Bachand], it [was] clear that she experiences significant symptoms related to her autoimmune hepatitis and medications she takes for it, which severely impact her ability to perform essential work functions." (See AR 1351.) Specifically, Dr. Ahn stated, "[t]he

[3] With respect to exhibits, the citations herein are to the page numbers assigned at the top of each page by this district's electronic filing system.

long-term use of [Myfortic] is associated with fatigue, muscle pains, weakness, dizziness, and headaches, all of which [Bachand] continues to endure" and that despite "discontinuation" of prednisone seven months earlier, Bachand continued to experience related symptoms "including dizziness, racing heartbeat, headaches, sensitivity to light and sound, chest discomfort, difficulty recovering from exertion, and occasional shortness of breath." (See id.) Such symptoms, Dr. Ahn concluded, rendered Bachand "unable to sustain full-time employment." (See AR 1352.)

In her personal statement, Bachand wrote she "struggle[s] to maintain functionality for more than a few hours due to overwhelming fatigue and other symptoms," including "persistent ear ringing, headaches, fatigue, and body aches." (See AR 1347.)

Thereafter, Reliance asked Dr. Jackson to "make two additional attempts to speak with Dr. Ahn…should [he] disagree with [Dr. Ahn's] findings," attempts which were unsuccessful despite Dr. Jackson's leaving two additional voicemails for Dr. Ahn, to which he, again, received no response (see AR 1411-12), after which, on September 24, 2024, Dr. Jackson provided an updated report to Reliance, wherein he concluded Bachand's recent submissions "ha[d] not changed [his] opinion" and that "[t]here were no significant complications from the disease process or therapy that resulted in restrictions or limitations for [Bachand]" (see AR 1412-13).

On October 2, 2024, Reliance, based on Dr. Jackson's conclusion that a "complete review of the medical records in [Bachand's] file" did not "support[] restrictions and limitations," denied Bachand's appeal, explaining to her that, "while [she] had complaints of dizziness, fatigue, abdominal pain, and numbness, the records d[id] not document [her] symptoms required further evaluation," and that Dr. Jackson had made multiple unsuccessful attempts to reach Dr. Ahn to discuss the conclusions in his letter. (See AR 352.)

On October 14, 2024, Bachand called Reliance and spoke with Reliance representative Elizabeth Fortin ("Fortin"), expressing her disagreement with the denial of her appeal. Fortin's notes regarding said conversation state Bachand shared with Fortin

United States District Court
Northern District of California

that "the issues she has [are] not primarily from her liver, but what makes her feel bad is her medication." (See AR 133.) Fortin then asked Dr. Jackson whether "it would be reasonable that symptoms reported by [Bachand] may be prolonged and chronic despite normalization of liver function testing as a result of medication side effects," to which inquiry Dr. Jackson responded that such symptoms "may be prolonged and chronic," but that, in this instance, "[t]here is no evidence of medication side effects." (See AR 1492.)

On October 25, 2024, Reliance issued a new denial letter, which included Dr. Jackson's above-quoted response to Fortin's question. (See AR 356.) Nevertheless, Reliance permitted Bachand to further supplement her appeal, and, on November 1, 2024, Dr. Ahn, submitted a questionnaire, dated October 30, 2024, wherein he wrote "medication side effects: headache, tinnitus, light/sound sensitivity, muscle pain," and that, in his opinion, Bachand was capable of working "20" hours per week. (See AR 1505, 1507.)[4] Thereafter, Dr. Jackson informed Reliance that the questionnaire had "not change[d] [his] opinion" as Dr. Ahn's "statements about the side effects from the medications [were] generalized" and that, in any event, there was nothing in the medical records to support a finding of "significant complications…that resulted in restrictions or limitations." (See AR 1527-28.)

On November 19, 2024, Reliance wrote Bachand, informing her of Dr. Jackson's findings, and upholding the denial of her appeal a "final" time. (See AR 359.)

On February 27, 2025, Bachand filed the instant action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking judgment "for all LTD Plan benefits owing at the time of said judgment, pre-judgment interest, attorney's fees [and] costs of this action." (See Complaint at 3:8-11.)

//

//

[4] There is nothing in the Administrative Record to suggest the questionnaire was provided by Reliance. It appears to be of the type used by law firms specializing in ERISA cases.

## LEGAL STANDARD

Under ERISA, a plan participant may bring a civil action "to recover benefits due to [him/her] under the terms of [his/her] plan," see 29 U.S.C. § 1132(a)(1)(B), in which action the plaintiff "has the burden of proving by a preponderance of the evidence that [he/she] was disabled under the terms of the plan," see Armani v. Nw. Mut. Ins. Co., 840 F.3d 1159, 1163 (9th Cir. 2016). Where, as here, a court's review of a decision to deny benefits is de novo,[5] its "task is to determine whether the plan administrator's decision is supported by the record," which it does "without giving deference to [the plan administrator's] conclusions or opinions." See Collier v. Lincoln Life Assurance Co. of Bos., 53 F.4th 1180, 1182, 1188 (9th Cir. 2022). To the extent disputes of fact exist, such disputes are "resolved by trial," and "[a]lthough Rule 43(a) requires that 'testimony' be taken in open court, the record [in an ERISA case] should be regarded as being in the nature of exhibits, which are routinely a basis for findings of fact even though no one reads them out loud." See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094 (9th Cir. 1999).

## DISCUSSION

### A. Supplementing Administrative Record

At the outset, the Court addresses plaintiff's request to introduce evidence not in the Administrative Record, namely, an exhibit, submitted with plaintiff's reply brief, containing "Clinical Summar[ies]" from Bachand's visits with Dr. Ahn on, respectively, June 4, 2024, August 13, 2024, and October 31, 2024, while her administrative appeal was pending.

Because the district court tries the case "on the record that the administrator had before it," see Kearney, 175 F.3d at 1095, it "may supplement the record only when circumstances clearly establish that additional evidence is necessary to conduct an

[5] On August 22, 2025, the Court approved the parties' stipulation that the appropriate standard of review is de novo.

adequate de novo review of the benefit decision," see Collier, 53 F.4th at 1186 (internal quotation and citation omitted).

In a declaration accompanying her exhibit, Bachand states "it was [her] understanding that Reliance already had [her] authorization to obtain those records directly from [her] doctors" (see Bachand Decl. ¶ 3), which understanding is supported by Reliance's June 5, 2024, letter to Bachand, wherein Reliance asks Bachand to "complete and return" an authorization form, stating it "will allow us to obtain updated medical information…during the review of your appeal" (see AR 344). Although the deadline for submission of documents in connection with Bachand's appeal was September 9, 2024 (see AR 1349), Reliance apparently never requested updated medical records from Dr. Ahn for the months between the period for which it previously had requested documents and that date.

"[T]reatment notes provide contemporaneous descriptions of a patient's symptoms and concerns, as well as the treatment chosen by the patient and doctor to address those symptoms and concerns." Wilcox v. Dearborn Life Ins. Co., 652 F. Supp. 3d 1136, 1153 (C.D. Cal 2023). Here, without up-to-date clinical summaries detailing Bachand's appointments with Dr. Ahn, the Court is unable to meaningfully ascertain the weight it should assign the conclusions Dr. Ahn set forth in the letter he submitted on September 9 or the questionnaire he submitted on November 1, nor can the Court meaningfully weigh the evidentiary value of Bachand's self-reported symptoms without knowing what she told Dr. Ahn during the course of her treatment.

The Court thus will consider the clinical summaries dated June 4, 2024, and August 13, 2024, which records, in contrast to the October 31, 2024, clinical summary, predate Dr. Ahn's letter and Bachand's personal statement, both submitted September 9, and Dr. Ahn's completed questionnaire, dated October 30, as well as the deadline for submission of documents in support of Bachand's appeal. See Muniz v. Amec Constr. Mgmt., Inc., 623 F.3d 1290, 1297 (9th Cir. 2010) (holding district court "did not abuse its discretion" in considering additional evidence where it "would be helpful to determine the

extent of [plaintiff's] disability"); Opeta v. Nw. Airlines Pension Plan for Cont. Emps., 484 F.3d 1211, 1217 (9th Cir. 2007) (holding district court may introduce evidence beyond administrative record related to "issues regarding the credibility of medical experts" (internal quotation and citation omitted)).

**B. Plaintiff's Burden**

Pursuant to the Policy, Bachand is entitled to LTD benefits if she is "Totally Disabled" (see AR 18), which term, as defined in the Policy, means an employee "after a Monthly Benefit has been paid for [twelve] months…cannot perform the material duties of Any Occupation" either because the employee "is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis" (see AR 10). "Any Occupation," in turn, is defined as "an occupation normally performed in the national economy for which an [employee] is reasonably suited based upon his/her education, training or experience." (See AR 9.)

Consequently, Bachand's burden is to show, by a preponderance of the evidence, that she is unable to perform the material duties of any occupation for which she is reasonably suited. In that regard, there is no dispute that Bachand has been diagnosed with autoimmune hepatitis, a chronic condition that will require ongoing care throughout her life. "That a person has a true medical diagnosis," however, "does not by itself establish disability," see Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 880 (9th Cir. 2004); rather, a "claimant must show that, whether diagnosed or not, his or her injury or sickness is disabling," see Nagy v. Grp. Long Term Disability Plan for Emps. of Oracle Am. Inc., 183 F. Supp. 3d. 1015, 1027-28 (N.D. Cal. 2016) (citing Jordan, 370 F.3d at 880).

In this case, the Court concludes Bachand has not carried her burden to show her illness prevented her from "performing the material duties of Any Occupation" at the time Reliance denied further LTD benefits. As set forth below, Bachand's medical records for the time period leading up to the termination of benefits are devoid of notations suggesting her symptoms were, at the time her LTD benefits were discontinued, of a

severity that was disabling.

**1. Basis for Denial of LTD Benefits**

Under ERISA, a plan administrator must provide “specific reasons” for denying LTD benefits, see 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1)(i), but “there is no requirement” that it provide the “reasoning behind the reasons,” see Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir. 1996). Here, Reliance, in rejecting Bachand’s administrative appeal, adopted Dr. Jackson’s opinion, explaining to Bachand: “based on the complete review of the medical records in your file…there were no supported restrictions and limitations.” (See AR 356 (denial of appeal) (further explaining: “while you had complaints of dizziness, fatigue, abdominal pain, and numbness, the records do not document your symptoms required further evaluation”); see also AR 359 (“final” denial).)[6]

Although Reliance’s relatively succinct explanation for its decision is by no means an exemplar for others to follow, it has satisfied ERISA’s requirement that it provide a “specific” reason for its decision, namely, that Bachand’s medical records did not support a finding of total disability. Such reason, as well as Dr. Jackson’s opinion, also contain an implicit rejection of Dr. Ahn’s and Bachand’s statements that her symptoms were so severe as to prevent full-time work, in that those statements were inconsistent with Dr. Ahn’s medical records, which contained no report by Bachand or finding by Dr. Ahn reflecting her inability to perform suitable work. The Court thus considers such implicit rejection as part of Reliance’s reasoning. See Demer v. IBM Corp. LTD Plan, 835 F.3d 893, 905 (9th Cir. 2016) (concluding, where plan administrator adopted its independent

---

[6] Contrary to Bachand’s argument, Reliance was not required to obtain an independent medical examination, see Frost v. Metropolitan Life Ins. Co., 320 Fed. App’x 589, 592 (9th Cir. 2009) (rejecting argument plan administrator “was…required to conduct an independent medical examination” to “justify[] the termination of benefits”), nor was Reliance required to “accord special weight to the opinions of [Bachand’s] physician[s],” see Muniz, 623 F.3d at 1297 (quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)); see also Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003) (holding opinions of treating doctors are “accorded whatever weight they merit”).

physician's opinion that there was "no objective or other compelling or convincing data to establish functional impairment," physician, and, consequently, plan administrator, had implicitly "conclu[ded] that [plaintiff's] complaints of fatigue and difficulty concentrating were not credible"); Wilcox, 652 F. Supp. 3d at 1153, aff'd, 2024 WL 2130598, at *1 (9th Cir. May 13, 2024) (concluding, where plan administrator "did not attack the credibility of [p]laintiff and his doctors" by "expressly reject[ing] [p]laintiff's subjective account of his symptoms," but, rather, "relied on the analyses of its medical file reviewers, who set forth reasons…for rejecting [p]laintiff's subjective reports," plan administrator had sufficiently provided "a basis for rejecting [p]laintiff's statements as being inconsistent with the medical evidence").

**2. Evidence of Total Disability**

As discussed above, Bachand's primary evidence as to the severity of her symptoms are Dr. Ahn's letter, the completed questionnaire, and her own personal statement.[7]

In his letter, Dr. Ahn concluded Bachand's "chronic symptoms, despite her stable liver function, severely limit her ability to perform full-time work." (See AR 1352.) The Administrative Record, however, supports, Reliance's determination that Dr. Ahn's conclusion was inconsistent with his clinical summaries, i.e., his contemporaneous treatment notes, there being no descriptors as to the severity of her symptoms for the

[7] To the extent Bachand relies on Dr. Perry, such reliance is limited to his Progress Notes regarding a May 17, 2024, tele-health visit in which, as discussed above, he documents her reporting what he characterizes as a "constellation of symptoms." A number of those symptoms, however, are described as "occasional" and likely attributable to "chronic stress," and symptoms described as "brain flutter" and "lightheadedness" appear for the first time in any doctor's records, while "nausea," and "shortness of breath" had not been mentioned since 2022. (See AR 515, 839.) The most significant issue reported to Dr. Perry is fatigue, which, as noted, "improves with adequate sleep and self-care." (See AR 1161-62.) Moreover, the May 17 visit was scheduled for a date shortly before Bachand filed her appeal, prior to which she had not seen Dr. Perry for a period of ten months. (See AR 1198 (Dr. Perry clinical summary dated July 18, 2023)); see also Wilcox, 652 F. Supp. 3d at 1154 (approving plan administrator's discounting plaintiff's report of symptoms "made in connection with [p]laintiff's applications for disability benefits").

United States District Court
Northern District of California

almost thirteen-month period preceding his August 2024 summary, in which he offers the not particularly helpful description "a lot of fatigue." (See Bachand Decl. Ex. A at 6); Biggar v. Prudential Ins. Co. of Am., 274 F. Supp. 3d 954, 968 (N.D. Cal. 2017) (discounting opinion of plaintiff's treating physician; noting "[a]lthough [plaintiff's physician] treated [plaintiff] for many years, her conclusions about the severity of [plaintiff's] symptoms [were] not supported by her own contemporaneous general examinations of [plaintiff]").

There is no dispute that prior to that thirteen-month period Bachand, on May 19, 2023, suffered a "major flare" (see AR 1181, 1253), following which Dr. Ahn in his summaries dated May 30 and July 20, 2023, described Bachand as experiencing "[e]xcessive fatigue," "some" abdominal pain, and, in another section, "a lot of fatigue and muscle aches" (see AR 1181-83, 1185-86), after which Reliance, based thereon, initiated the payment of LTD benefits (see AR 100, 306).

As of November 2, 2023, however, Dr. Ahn begins noting Bachand's continuous improvement. (See AR 1239, 1241 (November 2, 2023, clinical summary) (noting "[f]atigue better," "some fatigue and muscle aches"); AR 1235, 1237 (January 11, 2024, clinical summary) (noting "doing well," "some fatigue and muscle aches"); Bachand Decl. Ex. A at 4 (June 4, 2024, clinical summary) (noting "some fatigue and muscle aches but improved")). Consistent therewith, Dr. Holt, Bachand's hepatologist, noted in his January 17, 2024, clinical summary, the last of Dr. Holt's summaries contained in the Administrative Record, "she reports feeling well." (See AR 1253.)[8]

Although Dr. Ahn, in his August 13, 2024, clinical summary did, as discussed

---

[8] The Court also notes Bachand, in the prior thirteen-month period, namely, the period from June 7, 2022, to July 20, 2023, visited Dr. Ahn eleven times (see AR 1144-87), whereas in the next thirteen-month period, she visited Dr. Ahn only four times (see AR 1234-42; Bachand Decl. Ex. A at 4, 6), with the third such visit occurring four days after she filed her appeal of Reliance's denial of LTD benefits (see Bachand Decl. Ex. A at 4), and the fourth coming shortly before her deadline to submit additional support for that appeal (see Bachand Decl. Ex. A at 6).

United States District Court
Northern District of California

earlier herein, "recommend part-time [work][9] for at least [six] months given [Bachand] still ha[d] a lot of fatigue," he also wrote, in a separate paragraph, "some fatigue and muscle aches but improved." (See Bachand Decl. Ex. A at 6.) Moreover, his use of "a lot," as noted, is not especially enlightening, particularly in the absence of any elaboration as to the circumstances under which Bachand was experiencing that symptom.

Similarly unsupported by his treatment notes is Dr. Ahn's statement in his letter submitted September 9 that "sensitivity to sounds" and "ongoing tinnitus" preclude Bachand from work (see AR 1352), as his clinical summaries do not support the existence of those symptoms to anything near a disabling degree. In that regard, Dr. Ahn described the audiogram, which reflected a four percent loss of "anticipated" hearing in one ear (see AR 264, 636), as revealing "some hearing loss" (see AR 1185) and, described the "onset" of tinnitus as resulting from "from loud music exposure," i.e., a concert (see AR 711, 713), and that "[u]sing custom headphones…help" (see AR 1187). Although additionally therein, Dr. Ahn states Bachand had "reported persistent ringing in the ears since her diagnosis and treatment began" (see AR 1351), his clinical summaries from before Bachand's attendance at the aforementioned concert do not note any reports by Bachand of ringing in her ears.[10]

[9] Although, in the above-referenced clinical summary, Dr. Ahn does not explain how many hours per week Bachand could work on a "part-time" basis, in his subsequently submitted questionnaire, as noted earlier herein, he estimated she could work 20 hours per week. (See AR 1507.) Under the Policy, "[f]ull-time" is defined as "working [for an employer] for a minimum of 20 hours during a person's regular work week." (See AR 9.) Consequently, as the Court and counsel explored at the hearing, it is entirely possible Dr. Ahn's conclusion that Bachand could work "part-time" is consistent with her working what is, for purposes of the instant analysis, full-time. As Reliance did not rely on such evidence, however, the Court has not considered it in reaching its decision herein. See Collier, 53 F.4th at 1188.

[10] In a June 2023 email to Reliance, Bachand described the concert as a "loud noise incident," which caused "life altering noise sensitivity." (See AR 617.) Despite a referral to a specialist for further evaluation (see AR 636), however, Bachand has supplied no record pertaining to a visit to any such specialist, and the only indication that she saw a specialist is a brief mention in Dr. Perry's clinical summary dated July 18, 2023, which notation provides no information as to the severity of her symptoms (see AR 1198).

United States District Court
Northern District of California

To the extent Dr. Ahn in his letter, adds dizziness, headaches, chest discomfort, racing heartbeat, shortness of breath, difficulty recovering from exertion, and abdominal discomfort to the symptoms that, in his opinion, prevent Bachand from working (see AR 1351-52), his medical records are not consistent with such opinion. First, Dr. Ahn does not include in any of his records any reference to dizziness, headaches, racing heartbeat, shortness of breath, or difficulty recovering from exertion. Next, as to abdominal discomfort, Dr. Ahn, in his November 2, 2023, and January 11, 2024, clinical summaries, describes Bachand as only experiencing "some abdominal discomfort sometimes" (see AR 1235, 1239), and in his more recent June 4 and August 13, 2024, clinical summaries, makes no reference of any kind to abdominal discomfort (see Bachand Decl. Ex. A at 4, 6).

Moreover, in his September 9 letter, Dr. Ahn's conclusion as to disability appears to be based on what he understands to be the physical demands and social obligations of Bachand's prior employment. (See AR 1352 (opining her symptoms "make it difficult for her to perform physical tasks such as lifting, squatting, and standing for long periods"; "frequently force [her] to step away from meetings"; "hinder [her] ability to socialize"; make her "unable to meet the travel demands of her job"; and make her "unable to enter venues with loud crowds or amplified sound").)

Once a claimant has been paid benefits for twelve months, however, Totally Disabled is not defined as an inability to perform one's former job, but, rather, "an occupation normally performed in the national economy" for which the claimant "is reasonably suited based upon his/her education, training, or experience." (See AR 9-10.) As set forth in the vocational specialist's report, one of the categories for which Bachand is reasonably suited, biomedical engineer, is classified as "Sedentary," which requires only "[e]xerting up to [ten] pounds of force occasionally," "sitting most of the time," and "walking or standing for brief periods of time." (See AR 1430, 1440 (listing U.S. Department of Labor classifications).)

While, in the questionnaire, which was submitted after the vocational specialist's

United States District Court
Northern District of California

report, Dr. Ahn opined that Bachand can only lift ten pounds "[r]arely," and can only sit for twenty minutes at a time (see AR 1506-07), there is, as noted above, nothing in his records setting forth a basis for such conclusion, and, although given the opportunity to "[a]ttach relevant treatment notes, radiologist reports, laboratory and test results as appropriate" to support the conclusions set forth in said questionnaire (see AR 1505), he elected not to do so.

Further, as Reliance set forth in its denial letter, "Dr. Jackson called Dr. Ahn on September 19, 2024, and September 20, 2024," and "[a]lthough he left messages, Dr. Ahn did not return Dr. Jackson's calls." (See AR 356.) Dr. Ahn's seeming unwillingness to discuss the conclusions in his letter with Dr. Jackson, despite multiple attempts by Dr. Jackson to speak with him, supports Reliance's determination to reject Dr. Ahn's opinions, as Dr. Ahn, while willing to write a letter for Bachand, was apparently not prepared to be questioned about the basis of his conclusions by another medical professional.[11]

In sum, Dr. Ahn's opinions do not suffice to support a finding of total disability. The Court next turns to Bachand's personal statement.

In her statement, Bachand, as noted, wrote that she "struggle[s] to maintain functionality for more than a few hours due to overwhelming fatigue and other symptoms," including "persistent ear ringing, headaches, fatigue, and body aches." (See AR 1347.) There is no dispute that a claimant's subjective statements about his or her symptoms and limitations can support a finding of total disability. Here, however, Bachand's personal statement, whether considered separately or in combination with the

[11] To the extent plaintiff's counsel, at the hearing, argued Dr. Jackson should have written a letter to Dr. Ahn once he did not receive a call back from Dr. Ahn, the Court is not persuaded. As set forth in his report, Dr. Jackson called Dr. Ahn four times, twice before his first report, and twice more before his second report, leaving voicemails each time. (See AR 1321, 1411.) Dr. Jackson's reports, which listed his attempts to speak with Dr. Ahn, were shared with plaintiff (see AR 352-53), who, assumedly, shared them with Dr. Ahn. Indeed, Dr. Ahn's letter was a response to Dr. Jackson's first report (see AR 1351), which report made clear Dr. Jackson had tried to speak with him. Plaintiff cannot fault Dr. Jackson and Reliance for Dr. Ahn's unwillingness to engage in a dialogue.

United States District Court
Northern District of California

other evidence, fails to suffice for essentially the same reasons as set forth with respect to Dr. Ahn's opinions, namely, an absence in her medical records of either her reporting or a physician's recording of any symptom being of such severity as to support a finding she was unable to perform suitable work at the time Reliance denied further LTD benefit payments. See Wilcox, 652 F. Supp. 3d at 1154-55 (finding plaintiff's "subjective complaints" insufficient to establish total disability where "not supported by contemporaneous office notes for the relevant time period").

In reaching its determination, Reliance was not required to accept Bachand's reported symptoms "at face value," see Kushner v. Lehigh Cement Co., 572 F. Supp. 2d 1182, 1191 (C.D. Cal. 2008) (rejecting plaintiff's argument that "subjective complaints should be accepted at face value"; concluding "[t]he rule is to the contrary"), and could "take the lack of objective evidence into account in making its decision," see Safavi v. SBC Disability Income Plan, 493 F. Supp. 2d 1107, 1118 (C.D. Cal. 2007).

**C. Conclusion: Bachand Has Not Carried Her Burden.**

The Court is sympathetic to Bachand's predicament and what will surely be a difficult, life-long battle to keep the symptoms of her condition at bay and maintain a healthy life. The Court, however, is constrained by the record before it, and, on those facts, Bachand has not carried her burden to show she is Totally Disabled.

Accordingly, for the reasons stated above, the Court finds Reliance's determination to terminate Bachand's LTD benefits is supported by the record, and, consequently, it is entitled to judgment in its favor.

**IT IS SO ORDERED.**

Dated: September 15, 2026

MAXINE M. CHESNEY
United States District Judge